**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

**SAJJAD NASIR,**
Plaintiff,

v.

SECRETARY OF THE UNITED STATES DEPARTMENT OF LABOR; EQUINIX, INC.; COMMISSIONER OF POLICE, STATE OF NEW SOUTH WALES, COMMONWEALTH OF AUSTRALIA,
Defendants.

**Case No. 2:26-cv-03788-JCC**

# EXHIBIT 7

## PLAINTIFF'S COMPLAINTS TO NASDAQ MARKETWATCH AND TO THE JAPANESE SECURITIES AND EXCHANGE SURVEILLANCE COMMISSION CONCERNING EQUINIX, INC.'S "LEASEWEB JAPAN" DISCLOSURES, TOGETHER WITH THE EQUINIX-LEASEWEB CASE STUDY (16 APRIL 2024), THE RELATED SECURITIES CLASS ACTION COMPLAINT, AND THE ORDER ON THE MOTION TO DISMISS

Submitted by: Sajjad Nasir, Plaintiff, pro se. U 29 30-44 Railway Terrace, Granville NSW 2142, Australia. Email: sajjadqut01@outlook.com.

*This exhibit consists of the documents identified in the Table of Contents on the next page, together with this cover sheet and a divider page for each tab. The exhibit pages are numbered consecutively at the foot of each page.*

# EXHIBIT 7 - TABLE OF CONTENTS


| Tab | Document | Date | Ex. pg. |
|---|---|---|---|
| **7-A** | Plaintiff's index complaint to Nasdaq MarketWatch / Nasdaq Index Services concerning Equinix, Inc.'s disclosure "Leaseweb accelerates Asia expansion with scalable infrastructure" (CS_Equinix-Leaseweb_EN-A4 \| 2117 \| v041624 \| Q423) | 8 Jan 2026 | 6 |
| **7-B** | Nasdaq Regulation acknowledgment of the complaint (Stanley Higgins, Associate Vice President) | 15 Jan 2026 | 8 |
| **7-C** | Plaintiff's complaint to the Securities and Exchange Surveillance Commission (SESC), Japan, concerning "Leaseweb Japan K.K." (which refers to the National Tax Agency search, Corporate Number 6010401150511) | 10 Jan 2026 | 10 |
| **7-D** | Equinix, Inc. case study, "Leaseweb accelerates Asia expansion with scalable infrastructure" (CS_Equinix-Leaseweb_EN-A4 \| 2117 \| v041624 \| Q423) | 16 Apr 2024 | 12 |
| **7-E** | First pages of the securities class action complaint, Chan v. Equinix, Inc., Charles Meyers and Keith D. Taylor, N.D. Cal. No. 3:24-cv-02656-VC | 2 May 2024 | 15 |
| **7-F** | Order re Motion to Dismiss, Uniformed Sanitationmen's Association Compensation Accrual Fund v. Equinix, Inc., et al., N.D. Cal. No. 3:24-cv-02656-VC, Doc. 67 | 6 Jan 2025 | 19 |


*Note: the page references in the last column are to the numbered pages of this exhibit. Each tab is preceded by a divider page identifying the document and its date. The National Tax Agency registry extract referred to in Tab 7-C is not reproduced in this compilation.*

# EXHIBIT 7 - WHAT THE EXHIBIT SHOWS

### 1. Plaintiff reported the disclosure to the market operator.

On 8 January 2026, Plaintiff lodged a formal index complaint with Nasdaq MarketWatch and Nasdaq Index Services, identifying Equinix, Inc.'s 16 April 2024 case study (CS_Equinix-Leaseweb_EN-A4 | 2117 | v041624 | Q423) and requesting review under Nasdaq Rule 5250(a) and IM-5250-1. Nasdaq Regulation acknowledged the complaint on 15 January 2026.

### 2. Plaintiff reported the same disclosure to the Japanese regulator.

On 10 January 2026, Plaintiff complained to the Securities and Exchange Surveillance Commission (SESC), Japan, that the case study identifies "Leaseweb Japan K.K." as a counterparty and its managing director, while the Japanese corporate registry records a separately named entity, at a different registered address, with no verifiable operational presence (Corporate Number 6010401150511).

### 3. The statement complained of is identified on its face.

The 16 April 2024 case study states that "Leaseweb selected TY11, one of Equinix's newest International Business Exchange (IBX) data centers in Tokyo's Ariake district," and attributes a quotation to "Pieter Kraan, Managing Director, Leaseweb Japan K.K."

### 4. The related securities class action addressed a different subject.

The Chan complaint pleads that Equinix manipulated its Adjusted Funds From Operations by misclassifying recurring and maintenance capital expenditures as growth capital expenditures, and that it oversold power capacity. It does not mention Leaseweb, Japan, or the 16 April 2024 case study. Its class period runs from 3 May 2019 to 24 March 2024 - it ends before the case study was published.

### 5. The order on the motion to dismiss shows what was and was not adjudicated.

On 6 January 2025, the district court granted in part and denied in part the motion to dismiss in the related securities action. The Section 10(b) claim based on the AFFO allegations survived; the claim based on power capacity was dismissed. In so ruling, the court relied on the accounts of former Equinix employees describing the reclassification of routine maintenance work - battery replacements, chiller overhauls, and "dirty spend" operating expenses - as growth capital expenditures. The order does not address Leaseweb, Japan, or the 16 April 2024 case study.

### 6. Plaintiff's contention.

Plaintiff contends that the class litigation resolved the Company's accounting claims without adjudicating the customer-validation statement at issue here; that the statement post-dates the class period and is therefore outside the settlement; and that Equinix's public statements presented the "Leaseweb Japan" relationship as an operating fact. Plaintiff further contends that the Nasdaq and SESC complaints were protected activity, and that this exhibit demonstrates the reasonableness of his belief that Equinix's public disclosures were misleading.

# EXHIBIT 7 - RELEVANCE AND AUTHENTICATION

## Relevance

- Protected activity: Plaintiff's disclosures to Nasdaq (a market operator) and to the Japanese SESC (a foreign securities regulator) concerning Equinix's public statements - part of the sequence of disclosures that preceded the adverse actions alleged in the Complaint.

- The statement at issue: the 16 April 2024 case study, with its named counterparty, managing director, and Tokyo facilities (TY11/TY7).

- The scope of the related litigation: the class period ended 24 March 2024; the case study is dated 16 April 2024; the motion-to-dismiss order adjudicated the AFFO and power-capacity claims, not the customer-validation statement.

- Context for the Tokyo capacity and demand representations: the FY2023 and FY2024 Forms 10-K describe Tokyo capacity and demand growth (TY11, TY15; Asia-Pacific revenue growth) - the narrative the case study was published to support.

## Authentication

Tabs 7-A, 7-B and 7-C are true copies of e-mails sent and received by Plaintiff; Tab 7-D is a true copy of the document downloaded from equinix.com; Tab 7-E is a true copy of the complaint filed in the United States District Court for the Northern District of California; Tab 7-F is a true copy of the order filed in that court. Plaintiff will authenticate these documents by declaration under 28 U.S.C. Section 1746.

**EXHIBIT 7**

# TAB 7-A

## PLAINTIFF'S INDEX COMPLAINT TO NASDAQ MARKETWATCH / NASDAQ INDEX SERVICES

8 January 2026

*Concerning Equinix, Inc.'s disclosure "Leaseweb accelerates Asia expansion with scalable infrastructure" (CS_Equinix-Leaseweb_EN-A4 | 2117 | v041624 | Q423).*

**Formal Index Complaint - Equinix, Inc. (Index: CS_Equinix-Leaseweb_EN-A4 | 2117 | v041624 | Q423).**

**From** Sajjad Nasir <sajjadqut01@outlook.com>
**Date** Thu 08/01/2026 12:47
**To** Index Services <IndexServices@nasdaq.com>; nasdaqmarketwatch@nasdaq.com <nasdaqmarketwatch@nasdaq.com>
**Cc** Misconduct Issuer <issuermisconduct@asx.com.au>

2 attachments (436 KB)
CS_Equinix-Leaseweb_EN-A4 _2117 _v041624_Q423.pdf; Confirmation of request received re_ NXT – Listing Rule.pdf;

Dear Nasdaq's Index Client Services Team,

Nasdaq is referred to the issue titled "Leaseweb accelerates Asia expansion with scalable infrastructure" (CS_Equinix-Leaseweb_EN-A4 | 2117 | v041624 | Q423), dated 16 April 2024, by Equinix, Inc. (Index: CS_Equinix-Leaseweb_EN-A4 | 2117 | v041624 | Q423).

1. The issue references the digital and colocation services provision legal agreement between Equinix, Inc. and Leaseweb Japan K.K., as identified in:
   "Leaseweb selected TY11, one of Equinix's newest International Business Exchange™ (IBX®) data centers in Tokyo's Ariake district, to meet its customers' needs for additional space and connectivity. Leaseweb's front-line staff work hand in hand with the Equinix team to provide simplified experiences that are intuitive, easy to action, and friction-free."
2. The issue acknowledges a prior agreement that no longer met operational demands for digital and colocation services, stating:
   "As Leaseweb, a global cloud service and IaaS provider, expanded into Asia, rapid growth led to capacity strain at its Equinix TY7 facility in Tokyo. This required a new data center with ample capacity and enhanced connectivity. Additionally, a growing demand for sustainable infrastructure required a facility that aligned with clients' sustainability goals, emphasizing low power usage effectiveness (PUE) and reduced energy consumption."
3. The issue confirms the materialisation of a new agreement for digital and colocation services at TY11 between Equinix, Inc. and Leaseweb Japan K.K., referencing the same operational requirements and capacity drivers described above.
4. The issue identifies the counterparty to the agreement as "Leaseweb Japan K.K." and identifies its senior management as "Pieter Kraan, Managing Director, Leaseweb Japan K.K."
5. The issue counterparty public information A separate document titled "Sales Terms and Conditions – Leaseweb Japan K.K." identifies the entity's address as 2-12-7, 2F, Akasaka, Minato-ku, Tokyo 107-0052, Japan, and identifies key management as "John Duley, Managing Director, Leaseweb Japan."
6. National Tax Agency (Japan) corporate-number records do not identify the trading name "Leaseweb" or "Leaseweb Japan K.K." as incorporated under the Companies Act or any other applicable laws, nor as having any registered office address or assigned corporate number.
7. The issue bears resemblance to a similar arrangement involving the same counterparty and an entity listed on the ASX 100 Index (NXT), where the counterparty was found to be non-existent, without valid management, address, business operations, and insolvent.

Having regard to Items 1–7, and pursuant to Nasdaq Rule 5250(a), the issue appears to engage the provisions relating to the disclosure of material information and may therefore trigger consideration under IM-5250-1.

**Issue Attachments** :

- 1. issue titled "Leaseweb accelerates Asia expansion with scalable infrastructure" (CS_Equinix-Leaseweb_EN-A4 | 2117 | v041624 | Q423), dated 16 April 2024
- 2. Issue resemblance to entity listed on the ASX 100 Index (NXT).

Full name of the complainant : Sajjad Nasir

Company : N/A

**EXHIBIT 7**

# TAB 7-B

## NASDAQ REGULATION - ACKNOWLEDGMENT OF COMPLAINT

15 January 2026

*E-mail from Stanley Higgins, Associate Vice President, Nasdaq Regulation.*

## Equinix, Inc

**From** Stanley Higgins <Stanley.Higgins@nasdaq.com>
**Date** Thu 15/01/2026 03:01
**To** sajjadqut01@outlook.com <sajjadqut01@outlook.com>
**Cc** Index Complaints <IndexComplaints@nasdaq.com>

Hello,

I am following up on your January 7, 2026 correspondence to Index Complaints regarding Equinix, Inc.  We will review the information you provided.  However, please note that Nasdaq does not publicly disclose information about the regulatory investigations it conducts.

Thank you,
Stan

Stan Higgins
Associate Vice President
Nasdaq Regulation

Nasdaq

+ 410 689 8614
stanley.higgins@nasdaq.com
805 King Farm Blvd., Rockville, MD 20850

Nasdaq - Internal Use: Distribution limited to Nasdaq personnel and authorized third parties subject to confidentiality obligations

**EXHIBIT 7**

# TAB 7-C

## PLAINTIFF'S COMPLAINT TO THE SECURITIES AND EXCHANGE SURVEILLANCE COMMISSION (SESC), JAPAN

10 January 2026

*Concerning "Leaseweb Japan K.K."; refers to the National Tax Agency search, Corporate Number 6010401150511.*

**Att: Information Processing Officer, Market Surveillance Division, Executive Bureau, Securities and Exchange Surveillance Commission**

**From** Sajjad Nasir <sajjadqut01@outlook.com>
**Date** Sat 10/01/2026 07:58
**To** equestion@fsa.go.jp <equestion@fsa.go.jp>

1 attachment (2 MB)
Securities and Exchange Surveillance Commission Complaint 10 1 26.pdf;

Information Processing Officer, Market Surveillance Division,
Executive Bureau, Securities and Exchange Surveillance Commission
Central Government Office Building No.7, 3-2-1 Kasumigaseki, Chiyoda-ku, Tokyo, JAPAN 100-8922

**Subject: Trading Name "Lease web" and Securities Issuer Disclosure: Verification and Regulatory Risks**

**Entity Registration and Verification Issues**

Lease web Japan is incorporated under the Companies Act. This submission respectfully requests that the Securities and Exchange Surveillance Commission (SESC) review and consider appropriate regulatory measures regarding the enclosed National Tax Agency (Japan) registry search for Lease web Japan Co., Ltd. (Corporate Number 6010401150511). The corporate information system provides both an English transliteration ("Lease web Japan Co., Ltd") and a furigana phonetic spelling ("Lease Web Japan"). Official registration with the Legal Affairs Bureau, however, exists solely under the Japanese legal name. Registry searches confirm that only the trade name "Lease web Japan Co., Ltd" (with a space) yields results; the English variant "Leaseweb Japan Co., Ltd" (without a space) returns no record. Since the entity's establishment on 27 January 2020, the only recorded amendment has been a change of registered office in October 2020. There has been no substantive documentation filed since incorporation, and the registered address provides no evidence of an active place of business. As a result, there is no verifiable indication of operational activities, governance, or commercial presence for the company.

**Inconsistencies in Security Issuers' Disclosures**

Reference materials frequently cite variations such as "Leaseweb" or "Leaseweb Japan K.K." in connection with claims of business expansion; however, these are not substantiated by official records. These inconsistencies significantly hinder verification processes and heighten market risk. For example, Equinix, Inc. references "Lease web Japan Co., Ltd" within its disclosures, yet these are not fully aligned with public registry data, raising legitimate concerns regarding compliance with Japanese investor standards.

**Market Fairness and Transparency Concerns**

The accompanying disclosure (CS_Equinix-Leaseweb_EN-A4 2117 v041624 Q423) illustrates the complications introduced by multiple entity name variants, undermining accurate verification and transparency for customers and counterparties. Consequently, a formal complaint was lodged with NASDAQ seeking clarification of issuer details and adherence to disclosure requirements.

**Investor Protection and Regulatory Risk**

In a related matter, a complaint before the ASX concerns an entity bearing a similar name that is facing insolvency and allegations of documentation fraud. Such deficiencies impair creditor recovery, expose investors to substantial risk, and jeopardise market integrity by permitting issuers to present unverifiable entities as operational businesses.

**Enclosures:**

- National Tax Agency search result for Lease web Japan Co., Ltd.
- Equinix, Inc. Disclosure Document & NASDAQ Complaint
- NEXTDC LIMITED (NXT) Disclosure Document & ASX Complaint

Regards,
Sajjad

**EXHIBIT 7**

# TAB 7-D

## EQUINIX, INC. CASE STUDY - "LEASEWEB ACCELERATES ASIA EXPANSION WITH SCALABLE INFRASTRUCTURE"

16 April 2024

*Document ID: CS_Equinix-Leaseweb_EN-A4 | 2117 | v041624 | Q423.*

Case Study
**Cloud Service Provider**

# Leaseweb accelerates Asia expansion with scalable infrastructure

Bringing services closer to customers at the digital edge via Platform Equinix®

Global cloud services and Infrastructure as a Service (IaaS) provider expands into Equinix's largest data center in Tokyo to support rapid customer growth and demand for cloud services in Japan and the greater Asia-Pacific region.

## Challenge

As Leaseweb, a global cloud service and IaaS provider, expanded into Asia, rapid growth led to capacity strain at its Equinix TY7 facility in Tokyo. This required a new data center with ample capacity and enhanced connectivity. Additionally, a growing demand for sustainable infrastructure required a facility that aligned with clients' sustainability goals, emphasizing low power usage effectiveness (PUE) and reduced energy consumption.

## Solution

After consulting with Equinix, Leaseweb selected TY11, one of Equinix's newest International Business Exchange™ (IBX®) data centers in Tokyo's Ariake district, to meet its customers' needs for additional space and connectivity.

Designed to accommodate more than 3,500 cabinets and a total floor area of 153,800 square feet (14,288 square meters), TY11 offers a wide range of connectivity options, including Equinix Fabric®, which allows businesses to set up on-demand and secure connections to more than 1,500 customers across all regions around the world. It offers customers private and secure access to over 80 network service providers within Platform Equinix. TY11 can support the short- and long-term use of office spaces for companies who wish to set up physical offices in Tokyo.

## About Leaseweb

Leaseweb is a leading IaaS provider serving a worldwide portfolio of 20,000 customers ranging from SMBs to enterprises. Services include public cloud, private cloud, dedicated servers, colocation, content delivery network, and cybersecurity services, supported by exceptional customer service and technical support. With more than 80,000 servers, Leaseweb has provided infrastructure for mission-critical websites, internet applications, email servers, security, and storage services since 1997.

Leaseweb.com

## About Equinix

Equinix (Nasdaq: EQIX) is the world's digital infrastructure company®. Digital leaders harness Equinix's trusted platform to bring together and interconnect foundational infrastructure at software speed. Equinix enables organizations to access all the right places, partners and possibilities to scale with agility, speed the launch of digital services, deliver world-class experiences and multiply their value, while supporting their sustainability goals.

Equinix.com

"As a longtime partner of Equinix, we are pleased to leverage their IBX facilities in Tokyo to support our increasing network of local and global customers requiring high-density, scalable and cloud adjacent environments to support their digital transformation."

Pieter Kraan, Managing Director, Leaseweb Japan K.K.

## Benefits

With extended rack space capacity on TY11 and a flexible office space built to support the Japan operation, Leaseweb is now well-positioned to accommodate new customers and additional data center space requirements. Migrating its environment from TY7 to TY11 enables Leaseweb to optimize resources, providing seamless on-site customer support. Leaseweb's front-line staff work hand in hand with the Equinix team to provide simplified experiences that are intuitive, easy to action, and friction-free.

"As Leaseweb introduces cloud hosting services in the market, Equinix has provided us with the digital infrastructure to support our growth and to offer a full suite of cloud hosting and infrastructure services in the Japanese market," said Pieter Kraan, Managing Director, Leaseweb Japan K.K.

## Ready to get started?

Contact Equinix Sales to learn how you can expand your global footprint and scale your services quickly and seamlessly.

CONTACT US

## Results

### Future-proof scalable infrastructure

With the vast floor area and rack space capacity, Leaseweb can continue to expand its digital infrastructure to accommodate more customers, expand its service portfolio and scale resources as business demands.

### High-efficiency environment for high-capacity compute requirements

The high-capacity environment enables Leaseweb to support customers' demanding high compute and storage capacities, particularly those in the gaming and martech industries.

### Compliant low PUE facility that meets sustainability goals

Being in a facility with low PUE scores and an environment designed to meet global certification and compliance standards gives Leaseweb the confidence to support its customers' sustainability targets and attract customers with stringent sustainability goals.

**Drive your future forward on Platform Equinix®**

Platform Equinix is a global digital infrastructure platform. It is the only platform that allows digital leaders to reach the most strategic global markets with the largest ecosystem of digital partners, with infrastructure that assembles and deploys virtually in minutes.



© 2024 Equinix, Inc.

CS_Equinix-Leaseweb_EN-A4 | 2117 | v041624 | Q423

**EXHIBIT 7**

# TAB 7-E

## SECURITIES CLASS ACTION COMPLAINT - CHAN V. EQUINIX, INC., ET AL., N.D. CAL. NO. 3:24-cv-02656-VC

Filed 2 May 2024

*First pages of the complaint. Class period: 3 May 2019 to 24 March 2024 - ending before the 16 April 2024 case study.*

Staged proceddings

Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WAYNE CHAN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EQUINIX, INC., CHARLES MEYERS, and KEITH D. TAYLOR,<br><br>Defendants. | **Case No:**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Wayne Chan ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding EQUINIX, INC. ("Equinix" or the "Company"), analysts' reports and advisories about the Company, and other information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

15. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

16. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

17. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### <u>False and Misleading Statements</u>

18. On May 3, 2019, Equinix filed with the SEC its quarterly report on Form 10-Q for the period ended March 31, 2019 (the "1Q19 Report"). Attached to the 1Q19 Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Meyers and Taylor attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

19. The 1Q19 Report contained the following statement about the Company's internal controls:

> Our management, with the participation of our Chief Executive Officer and our Chief Financial Officer, conducted an evaluation, pursuant to Rule 13a-15 promulgated under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), of the effectiveness of our "disclosure controls and procedures" as of the end of the period covered by this quarterly report. ***Based on this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that the disclosure controls and procedures were effective as of the end of the period covered by this quarterly report***.

(Emphasis added),

20. The statement in ¶ 19 was materially false and misleading at the time it was made because the Company manipulated its financials to boost AFFO.

21. The 1Q19 Report contained the following statement regarding the "limitations on the effectiveness of controls":

> ***Our management, including our Chief Executive Officer and Chief Financial Officer, believes that our disclosure controls and procedures and internal control over financial reporting are designed and operated to be effective at the reasonable assurance level***. However, our management does not expect that our disclosure controls and procedures or our internal control over financial reporting ***will prevent all errors and all fraud***. A control system, no matter how well conceived and operated, ***can provide only reasonable, not absolute, assurance that the objectives of the control system are met***. Further, the design of a control system must reflect the fact that there are resource constraints, and the benefits of controls must be considered relative to their costs. ***Because of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that all control issues and instances of fraud, if any, have been detected***. These inherent limitations include the realities that judgments in decision making can be faulty, and that breakdowns can occur because of a simple error or mistake. ***Additionally, controls can be circumvented by the individual acts of some persons, by collusion of two or more people or by management override of the controls***. The design of any system of controls also is based in part upon certain assumptions about the likelihood of future events, and there can be no assurance that any design will succeed in achieving its stated goals under all potential future conditions; over time, controls may become inadequate because of changes in conditions, or the degree of compliance with policies or procedures may deteriorate. ***Because of the inherent limitations in a cost effective control system, misstatements due to error or fraud may occur and not be detected***.

(Emphasis added).

**EXHIBIT 7**

# TAB 7-F

## ORDER RE MOTION TO DISMISS - UNIFORMED SANITATIONMEN'S ASSOCIATION COMPENSATION ACCRUAL FUND V. EQUINIX, INC., ET AL., N.D. CAL. NO. 3:24-cv-02656-VC

Filed 6 January 2025 (Doc. 67)

*Granted in part and denied in part: the AFFO-based Section 10(b) claim survived; the power-capacity claim was dismissed. The order does not address Leaseweb, Japan, or the 16 April 2024 case study.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIFORMED SANITATIONMEN'S ASSOCIATION COMPENSATION ACCRUAL FUND,<br>Plaintiff,<br>v.<br>EQUINIX, INC., et al.,<br>Defendants. | Case No. 24-cv-02656-VC<br>**ORDER RE MOTION TO DISMISS**<br>Re: Dkt. No. 54 |

The motion to dismiss is granted in part and denied in part. This ruling assumes the reader is familiar with the complaint's allegations, the applicable legal standards, and the arguments made by the parties.

**I**

The defendants ask the Court to take judicial notice of 26 exhibits. The plaintiff objects to Exhibits 11-16. The request is granted as to the unopposed exhibits. As the plaintiff acknowledges, judicial notice can be taken for SEC filings, analyst reports, earnings call and Analyst/Investor Day transcripts, and court filings "for the purpose of determining what information was available to the market." *In re Splunk Inc. Securities Litigation*, 592 F. Supp. 3d 919, 930 (N.D. Cal. 2022); *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). The Court does not take notice of them for the truth of the statements they contain.

The request is also granted as to Exhibits 11-16. The plaintiff argues that these exhibits, which are Equinix's publicly available investor presentations, should not be judicially noticed for the truth of the statements they contain because they are not referenced in the complaint and their

AUTHENTICATED U.S. GOVERNMENT INFORMATION GPO

as "growth CapEx" or "expansion." Still others use "CapEx" to refer only to nonrecurring capital expenditures, using the term "OpEx" (or, operational expenses) to refer to recurring capital expenditures. But in all of the quotes, the employees describe efforts to classify what seem like recurring capital expenditures as non-recurring:

- A former executive stated that there was "pressure from management to push as much of CapEx into expansion." *Id.* ¶ 156. A former director of operations stated, "So anything, any operation that's completed of significance, you look for all different types of creative accounting ways to show it as CapEx." Hindenburg Report 24, Ex. 2, Dkt. No. 54-3. That director also said, "I mean, it's really about thinking out of the box about how you approach things. And if you can, if your accounting department will agree with you." *Id.* A former data center manager said, "They would assess all our expenses versus our recurring CapEx . . . [They were] always trying to squeeze your expenses, your OpEx [operating expenses], because it was 'dirty spend.'" *Id.* A former finance director said, "They [operating teams] have a lot of pressure on the operating budget. So, the operating cost and then they try to squeeze stuff that is kind of gray into the CapEx area and move it out of the OpEx area." *Id.* at 25. And a former mergers and acquisitions manager who "directly interacted with a finance lead on projects" said that the project's experts asked him "to do every machination to try and make a CapEx versus OpEx." *Id.*
- A former director "described that the company would obtain new serial numbers for refurbished chillers so it could then be accounted for as a 'new' item post-repair, and sometimes recognized as growth CapEx." Am. Compl. ¶ 157. The director said, "Chillers stay in place. You don't replace chillers. All you do is rebuild them. There's been some debate on this. What happens and what you work towards is you do a chiller overhaul. And you'd work with your chiller vendor to give you a new serial number on the unit . . . A new serial number with the unit, for all intents and purposes, looks, talks, walks like a brand new installation." *Id.*
- A former operations director stated "that Equinix would classify otherwise routine battery

replacements as growth CapEx by characterizing this activity as replacing a 'battery system.'" *Id.* ¶ 158. The director said, "So replacing a battery system is a capital improvement. Non-recurring . . . As long as it's part of that, as long as you replace the entire battery system . . . All you do is replace the batteries within the cabinets. And that's considered the system." *Id.* Multiple former employees also stated that Equinix improperly classified battery replacements as non-recurring capital expenditures.

- A former operations director said they would classify replacing lightbulbs as non-recurring expenditures. The director said, "Say you changed out fluorescents to LED light bulbs, that's a capital improvement. You're not replacing lightbulbs, you're enhancing . . . Say you have a facility. You needed to change light bulbs . . . Or you had to change all the ballasts in your light fixtures because they were just at age. Which is costly. You need an electrician to come in to take it down. You need to unwire it and rewire it. Now, if you were to go back in and now convert those florescent bulbs or systems with the ballast and the bulbs to an LED light, now you're performing an 'energy efficiency project.'" *Id.* ¶ 159. And that director confirmed to Hindenburg they would classify that expenditure as non-recurring and stated, "This is one of the tricks that the operations teams use to say, well, this is not ongoing. This is non-recurring CapEx." *Id.*
- A former director stated that Equinix would press vendors to issue new SKUs to lump operating costs into larger purchases and then record them as non-recurring capital expenditures. That director said, "So you can look for, even as far as buying tool sets. So one might not qualify. But if you go over a certain threshold and you buy a set of them, maybe five of them . . . that'll count towards your CapEx . . . You can also work with your vendors, your suppliers and create unique SKUs. So if I was going to buy a tool set that was say $500, right. Had a single SKU. Initially that would be considered OpEx. But if you went to your vendor and you said, 'hey, why don't you create a SKU with a five pack of those tool kits and get me a $2,500?' Now it's CapEx." Hindenburg Report 25, Ex. 2, Dkt. No. 54-3.

"Generally, I wouldn't say that that was really a factor for us in terms of affecting our maintenance costs and maintenance CapEx . . . And Q1 was low for us, but I think it was more an artifact of one pull forward into Q4, which is a common thing for us to do at the end of the year is to try to get those things pulled in if we can get them done in Q4 and then probably a little bit of things pushing out into Q2." *Id.* ¶ 86. These comments suggest Meyers and Taylor were monitoring capital expenditure numbers and aware of how they affected AFFO.

Finally, the fact that Meyers's and Taylor's bonuses were directly tied to hitting certain AFFO targets supports the inference of scienter, although this fact would not be sufficient on its own. *See No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003) (fact that the defendants' eligibility for stock options and executive bonuses were tied to the company's financial performance supported inference of scienter). Under a holistic view of the allegations, the complaint has created a strong inference of scienter.

**3. Loss Causation**

The complaint sufficiently alleges loss causation following a series of partial disclosures. Here, the defendants primarily argue that the release of the Hindenburg Report wasn't a corrective disclosure. They first argue that the Report was based on publicly available information and therefore didn't provide any new information to the market. But the Report was in fact largely based on non-public information from former employees. And, in any event, a corrective disclosure can be based on solely publicly available information so long as the complaint "plausibly" suggests "that other market participants had not done the same analysis." *In re BofI Holding, Inc. Securities Litigation*, 977 F.3d 781, 794 (9th Cir. 2020).

The defendants next argue that Hindenburg had an incentive to tank the stock price by issuing the Report. The "relevant question for loss causation purposes is whether the market reasonably *perceived*" the Report's "allegations as true and acted upon them accordingly." *Id.* at 792. Here, the complaint alleges facts suggesting the market reasonably believed that the Report's allegations were credible despite Hindenburg's short position. As discussed above, the

## III

The defendants seek dismissal of the plaintiff's Section 20(a) claims for failure to plead a primary violation of securities law, but because the Section 10(b) claim based on the AFFO allegations survives, the Section 20(a) claim based on those allegations survives as well. The Section 20(a) claim based on the power capacity allegations is dismissed.

* * *

Dismissal of the power capacity claims is with leave to amend. The plaintiff may either amend complaint within 21 days or proceed on this complaint and seek leave to amend later if discovery on the surviving claims reveals additional information relevant to the dismissed claims. Either way, discovery may begin immediately. The case management conference scheduled for January 10, 2025, is continued to January 17, 2025.

**IT IS SO ORDERED.**

Dated: January 6, 2025

VINCE CHHABRIA
United States District Judge